## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

THOMAS GROSS, on behalf of himself )
and on behalf of all others similarly )
situated, )
             )      **CIVIL ACTION NO.**
          **Plaintiff,** )
             )      **8:17-CV-01920-TGW**
v. )
             )
ADVANCED DISPOSAL SERVICES, )
INC., )
             )
          **Defendant.** )

## <u>DEFENDANT'S OPPOSITION TO PLAINTIFF'S</u>
## <u>MOTION FOR CLASS CERTIFICATION</u>

K. Bryance Metheny (Pro Hac Vice)
H. Carlton Hilson (Pro Hac Vice)
BURR & FORMAN LLP
420 North 20th Street
Suite 3400
Birmingham, AL 35203
Telephone:     (205) 251-3000
Facsimile:     (204) 458-5110

Jacqueline Simms-Petredis
FL Bar # 0906751
BURR & FORMAN LLP
201 North Franklin Street, Suite 3200
Tampa, Florida 33602
Tel: (813) 221-2626
Fax: (813) 357-3534

*Attorneys for Defendant*
*ADVANCED DISPOSAL SERVICES, INC.*

<u>Table of Contents</u>

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND ............................................................................................................... 2

    A.   ADS's Organizational Structure ............................................................................. 2

    B.   ADS's Hiring and Background Procedures .............................................................. 2

    C.   Plaintiff's Application to ADS ................................................................................ 3

    D.   Plaintiff's Claims ................................................................................................... 5

III. LEGAL STANDARD ....................................................................................................... 6

IV. ARGUMENT ................................................................................................................... 8

    A.   Plaintiff's Class Certification Motion is Moot. ....................................................... 8

    B.   The Background Class Cannot Be Certified. ........................................................... 9

        1.   Standing Requires Individualized Determinations. ......................................... 9

        2.   Most Class Members Have Arbitration Agreements. .................................... 11

        3.   The Vast Majority of Class Members Signed Different Forms ThanPlaintiff. ............................................................................................... 13

        4.   Plaintiff Has Not Established Superiority. ..................................................... 14

    C.   The Pre-Adverse Action Class Cannot Be Certified. .............................................. 17

        1.   The Class Is Improperly Defined. ................................................................. 17

            a. The Class is Not Ascertainable. ................................................................. 17

            b.   The Class Is An Improper Fail-Safe Class. ............................................. 19

        2.   Individualized Issues Predominate and Common Answers Do Not Exist. .... 19

            a. Individualized Issues Predominate Over ADS's One-Time Policy Deviation. .................................................................................................. 19

            b.   Individualized Issues Predominate Over The Adequacy of Notice to Plaintiff. .................................................................................................... 22

        3.   Plaintiff Has Not Established Class Superiority. ........................................... 23

V. CONCLUSION ................................................................................................................ 23

# I. INTRODUCTION

Plaintiff Thomas Gross seeks to certify two nationwide classes. Plaintiff's only "evidence" to support the proposed classes -- despite the months-long opportunity to conduct discovery -- is a generic, conclusory declaration copied nearly verbatim from a clearly distinguishable case[1] that fails to address the fundamental reasons why class certification is inappropriate here.

As an initial matter, class certification fails because Plaintiff's claims are moot. Plaintiff lacks Article III standing to represent either class because he did not suffer an injury. Further, Plaintiff cannot represent the Background Class -- and in fact there is no class -- because ADS's disclosure form was valid, and ADS did not act with reckless disregard, which is an essential element. (*See* ECF No. 36.)

Even if Plaintiff's claims were not already moot, class certification still fails. Plaintiff's Background Class cannot be sustained because (1) the evidence reveals that multiple putative class members lack standing and determining their standing would necessitate individualized inquiries, (2) the vast majority of putative class members agreed to arbitrate disputes and are precluded from litigation in this forum and on a class basis, (3) the same conduct is not at issue because many putative class members signed a different form than did Plaintiff; and (4) the FCRA's unique damage provisions provides each class member an interest in filing and controlling his or her own action.

Likewise, Plaintiff's Pre-Adverse Class fails because (1) the proposed class is not properly defined and clearly ascertainable, (2) common answers do not exist because Plaintiff's situation arose from a one-time deviation of policy and ADS has unique defenses to Plaintiff's claim, and

---

[1] *See, e.g.,* Declaration of William Fosbrink, *Frosbrink v. JSM-TBM Area Wide Protective, Inc.*, No. 8:17-cv-1154 (M.D. Fla. Dec. 12, 2017), ECF No. 33-2.

1

(3) the FCRA's unique damage provisions.  Plaintiff's motion is due to be denied in its entirety.

## II. BACKGROUND

### A.    ADS's Organizational Structure

ADS is a solid waste company that provides services to residential, commercial and industrial customers.  (*See* Ex. 1, Mitchell Dec. ¶3.)  ADS is organized into three Regions: South, Midwest and Eastern. (*Id.* at ¶4.)  Each Region is divided into Districts with local offices (or "business units"). (*Id.*) The South Region, for example, consists of six Districts (Florida South, Florida West, Alabama, Middle Georgia, Atlanta and the Bahamas) and seventy-seven local business units.  (*Id.*)

### B.    ADS's Hiring and Background Procedures

ADS uses a multistep hiring process. An interested person applies and, if qualified, is generally interviewed. If successful, an offer is extended, conditioned on a drug screen and background check. If the offer is accepted, the applicant receives a written disclosure explaining that ADS will use a third-party consumer reporting agency, Concorde, Inc., ("Concorde") to procure a background report for employment purposes, and the applicant electronically consents (hereinafter, the "D&A Form"). (*Id.* at ¶¶9, 11, Ex. A; s*ee also*, ECF No. 37-1.)  Importantly, the D&A Form changed in 2017; the old form was divided into two parts (a "Disclosure" and "Authorization") and certain provisions were removed.[2] (*Compare* Ex. A to Mitchell Dec., Ex. 1; Ex. A to Corpus Dec., Ex. 4; Ex. A to Leonard Dec., Ex. 8; Ex. A to Theus Dec., Ex. 9; Ex. A to Trice Dec., Ex. 10 and Exs. A & B, Anders Dec., Ex. 3; Exs. A & B to Foltz Dec., Ex. 5; Exs. A & B, Gillespie Dec., Ex. 6; Exs. A & B, Inserra Dec., Ex. 7; Exs. A & B, Walling Dec., Ex. 11;

---

[2] For example, the revised form removes reference to a FMCS pre-employment screen and certain information was moved exclusively to the Authorization document.

Exs. A & B, Wroblewski Dec., Ex. 12.)

After consent, the applicant completes certain Concorde-specific background paperwork and a background report is generated. (Ex. 1 at ¶11.) If the background report reveals information that, if true, could result in the applicant being ineligible for employment, ADS notifies the applicant. (*Id.* at ¶13.) Specifically, ADS sends a pre-adverse action letter, a copy of the background report, and a description of the applicant's FCRA rights (collectively, the "Pre-Adverse Action Packet"). (*Id.* at ¶14.) ADS's standard practice is to provide the Pre-Adverse Action Packet, and employees in the applicable District are assigned to mail or email the Packets. (*Id.*) In Plaintiff's case, employees assigned to the specific business unit for which he had applied were responsible for providing the Packet. *(Id.* at ¶15.) Applicants who demonstrate they are eligible for employment continue in the hiring process. (*Id.* at ¶20.)

The eligible applicant then complete ADS's onboarding process. The onboarding process includes a requirement that the new hire sign an arbitration agreement. (*Id*. at ¶¶18-19; Ex. 2, Halloran Dec. at ¶5.) The arbitration agreement provides that all employment-related disputes must be pursued in binding arbitration and precludes class claims. (*See* Ex. C to Ex. 1; *see also* Ex. 2.) ADS ultimately onboards most applicants for whom a background report is procured and, thus, most are subject to mandatory arbitration. (Ex. 1 at ¶19.) Only those relatively few applicants who, for example, fail a drug screen or background check, or fail to come to work, will not execute a binding arbitration agreement. (*Id.* at ¶19.)

### C. Plaintiff's Application to ADS

In October 2016, Plaintiff Gross applied for a Diesel Mechanic position in ADS's Lecanto, Florida office, which is located in ADS's Florida West District. (Ex. 1 at ¶22.) ADS had recently acquired Lecanto and, thus, had specially assigned its Regional Office and Regional Human Resources Managers to support their human resource functions, including issuing Pre-Adverse

3

Action Packets. (*Id.* at ¶¶15-16.) They were not responsible for issuing these packets for other Florida offices. (*Id.*)

Plaintiff completed ADS's initial hiring steps and a conditional offer of employment was made. (*Id.* at ¶26.) Plaintiff signed ADS's old D&A Form and Concorde's paperwork, with no mention it confused him. (*Id.* at ¶24.) Thus, a background report was generated. (*Id.* at ¶27.) While Plaintiff now asserts the report was "confusing," 10 putative class members testified it was not and that they understood the form, that a background report would be procured, and that the background report would be used for employment purposes. (*See* Ex. 3 at ¶¶7-9; Ex. 4 at ¶¶5-9; Ex. 5 at ¶¶5- 9; Ex. 6 at ¶¶5-9; Ex. 7 at ¶¶5-9; Ex. 8 at ¶¶5-9; Ex. 9 at ¶¶5- 9; Ex. 10 at ¶¶5-9; Ex. 11 at ¶¶5-9; Ex. 12 at ¶¶5-9.)

Unfortunately, Plaintiff's background report revealed a 2013 speeding ticket which precluded him from driving an ADS vehicle and rendered him ineligible for the Diesel Mechanic job. (Ex. 1 at ¶28.) Further, as a corollary, he failed to identify the ticket on his employment application (falsely claiming he had no motor vehicle violations) and was deemed ineligible for this independent reason. (*Id.* at ¶28.)

During Plaintiff's onboarding process, ADS's Human Resource Manager was on leave. (*Id.* at ¶29.) As a consequence, she initially was not available to give final approval to issue a Pre-Adverse Action Packet to Plaintiff. (*Id.* at ¶29.) This situation was unique, however, and ADS does not know, and Plaintiff has no evidence of, any other instances like this one. (*Id.* at ¶30.) Given the unique circumstances, upon her return from leave ADS's Human Resources Manager spoke with Plaintiff about why his job offer would be rescinded. (*Id.* at ¶31.) She further explained, however, that if his background report was incorrect ADS would proceed in the hiring process. (*Id.* at ¶31.) She also mailed him a Pre-Adverse Action Packet. (*Id.* at ¶31.) But Plaintiff

ultimately admitted that the ticket on his report was accurate. (*Id.* at ¶31.) Plaintiff was not hired and, thus, did not complete ADS's onboarding process or sign an arbitration agreement. (*Id.* at ¶32.)

### D. Plaintiff's Claims

Plaintiff's motion seeks to certify two classes pursuant to F.R.C.P. Rule 23: the "Background Class" and the "Pre-Adverse Class." (ECF No. 37 at 7-8.)

The "Background Class" is based on Counts I and II of the Amended Complaint. (ECF No. 20 at 12-21.) In Count I, Plaintiff alleges that ADS's simple, one-page D&A Form is unlawful because it does not "consist[] solely of the disclosure" in violation of 15 U.S.C. § 1681b(b)(2)(A)(i). (*Id.* at 12-17.) He argues that "extraneous information" is in the D&A Form and that it "confused" him and affected his decision making process. (*Id.* at 14.) In Count II, which is simply a derivative of Count I, Plaintiff alleges that using the form to procure his background report was unlawful in violation of 15 U.S.C. § 1681b(b)(2)(A)(ii). (*Id.* at 18.) Plaintiff alleges that ADS used the same form for other putative class members and, accordingly, seeks to represent a "Background Class" as follows:

> All ADS Inc. employees and job applicants in the United States who were the subject of a consumer report that was procured by ADS Inc. within two years of the filing of this complaint through the date of final judgment in this action as required by 15 U.S.C., § 1681b(b)(2)(A) and as to whom ADS Inc. used the purported disclosure and authorization form, or substantially similar forms, attached hereto as Exhibit A.

(ECF No. 37 at 7-8.)

Plaintiff's Pre-Adverse Class is based on Count III of the Amended Complaint. (ECF No. 20 at 21-23.) Plaintiff alleges that ADS took adverse action against him without first providing him a pre-adverse action notice as required by 15 U.S.C. § 1681b(b)(3)(A). (ECF No. 37 at 8.) Plaintiff alleges (without any personal knowledge or foundation) that ADS also failed to provide

the pre-adverse action notice to other putative class members before taking adverse actions and, thus, seeks to represent a Pre-Adverse Class as follows:

> All ADS Inc. employees and prospective employees in the United States against whom adverse employment action was taken by ADS based, in whole or in part, on information contained in a consumer report obtained within two years of the filing of this complaint through the date of final judgment in this action, and who were not provided the proper pre-adverse notice as required under 15 U.S.C. § 1681b(b)(3)(A).

(ECF No. 37 at 8.)

Plaintiff seeks statutory damages, costs, and attorneys' fees -- but not actual damages -- on behalf of both classes. (ECF No. 20 at 23.)

## III. <u>LEGAL STANDARD</u>

It is well settled that "[t]he class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."[3] As a threshold issue, a plaintiff must demonstrate that the proposed class is "adequately defined and clearly ascertainable."[4] If the class is ascertainable, to maintain a case as a class, the party seeking certification must satisfy each prerequisite in Rule 23(a) and one prerequisite from Rule 23(b).[5]

Rule 23(a) sets forth four prerequisites to maintain any claim as a class action:

(1) the class is so numerous that joinder of all members is impracticable ("numerosity"); Rule 23(a)(1)'s numerosity "inquiry is not whether the number of class members is 'too few' to satisfy the rule, but whether joinder of the proposed class members is impracticable."[6] "[W]hile there is no fixed numerosity rule, generally less than twenty-

---

[3] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation omitted).

[4] *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).

[5] *Id.*; *see also Dukes, 564 U.S. at 348; Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000).

[6] *Legg v. Voice Media Grp., Inc.*, No. 13-62044, 2014 WL 1766961, at *2 (S.D. Fla. May 5, 2014); *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986).

one is inadequate, more than forty adequate, with numbers between varying according to other factors"[7];

(2) there are questions of law or fact common to the class ("commonality"); Rule 23(a)(2)'s commonality requirement provides that class members' "claims must depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke"[8];

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); Rule 23(a)(3)'s typicality requirement arises when "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory"[9]; and

(4) the representative parties will fairly and adequately protect the interests of the class ("adequacy of representation"). Rule 23(a)(4)'s "adequacy of representation" requirement provides that a plaintiff must show that his or her interests are not antagonistic to or in conflict with other members of the class.[10] "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members."[11]

Failure to establish any one of the four Rule 23(a) factors precludes certification.

Plaintiff must also prove one of the two requirements of Rule 23(b)(3), which are predominance and superiority. Rule 23(b)(3)'s predominance prong requires a plaintiff to also prove that "questions of law or fact common to class members predominate over any questions affecting only individual members."[12] Rule 23(b)(3)'s superiority prong requires that a plaintiff must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[13]

---

[7] *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (citation omitted).

[8] *Dukes*, 564 U.S. at 350.

[9] *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (citation omitted); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000).

[10] *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985).

[11] *Wright v. Circuit City Stores, Inc.*, 201 F.R.D. 526, 545 (N.D. Ala. 2001) (citation omitted).

[12] *Comcast Corp. v. Behrend*, 569 U.S. 27, 30 (2013) (citing Fed. R. Civ. P. 23(b)(3)).

[13] *Vinole v. Countrywide Home Loans, Inc.* 571 F.3d 935, 944 (9th Cir. 2009) (citing Fed. R. Civ. P. 23(b)(3)).

A plaintiff cannot meet his burden of proof through speculation, assumptions or inferences but, rather, must proffer admissible evidence.[14]    A court must conduct a "rigorous analysis" to ensure that plaintiff has met his burden with respect to each Rule 23 requirement.[15]

## IV. ARGUMENT

### A.    Plaintiff's Class Certification Motion is Moot.

As an initial matter, ADS's Motion for Judgment on the Pleadings ("Motion") is due to be granted on all of Plaintiff's claims, rendering Plaintiff's class claims moot. (ECF No. 36.)  As set forth in ADS's Motion, Plaintiff lacks Article III standing to represent either class because he did not suffer an injury.  Mere procedural violations cannot create standing under the FCRA.  Over twenty district courts in other circuits, four district courts in the Eleventh Circuit, and the only two circuits to squarely address the issue have reached this conclusion. (*See* ECF No. 36 at 11-12).

Further, the Eleventh Circuit recently held procedural violations substantially similar to those under the FCRA do not create standing. (*Id.* at 12).  In apparent recognition that he must show more than a procedural violation, Plaintiff's Opposition to Defendant's Motion consistently contends ADS's D&A Form "confused" him.  (ECF No. 43 at 1, 2, 10, 12.)  But his alleged "confusion" still does not establish a cognizable harm.[16]    Even if it did, other putative class members will each require their own individualized inquiry[17] rendering class certification inappropriate.  Plaintiff simply cannot have it both ways; he cannot claim standing based upon his individual circumstances ("confusion") and then ask the Court to ignore the fact that determining

---

[14] *Brown v. Electrolux Home Prods. Inc.* 817 F.3d 1225, 1233-34 (11th Cir. 2016).

[15] *Id.*

[16] Plaintiff has not shown his "confusion" affected his decision making process or caused him any harm.

[17] For example, was the individual confused?  Did it affect the individual's decision making process?  Would the person have acted differently if he was not confused?

class members' standing will require individualized inquiries.

Alternatively, Plaintiff cannot represent the Background Class because ADS's D&A Form was valid, and ADS did not act with a reckless disregard of the law. Indeed, Plaintiff cannot show, as he must, anything to the contrary. Because Counts I and II fail on the pleadings, his "Background Class" based on those Counts also fails.

### B. The Background Class Cannot Be Certified.

#### 1. Standing Requires Individualized Determinations.

Persons who have suffered no injury have no standing to become a class member. Plaintiff's proposed class impermissibly includes putative class members who did not suffer any injury, and determining whether other class members suffered an injury requires an individualized inquiry into each class member's own unique circumstances.

"[W]hether or not the proposed class includes class members who have not suffered an injury is a Rule 23 question."[18] Courts have frequently held that "no class may be certified that contains members lacking Article III standing."[19] While the Eleventh Circuit and the Supreme Court have not definitively decided this issue, the Supreme Court has stated that "Rule 23's requirements must be interpreted in keeping with Article III [standing] constraints,"[20] and Chief Justice Roberts recently explained in a concurrence: "Article III does not give federal courts the

---

[18] *Moore v. Apple Inc.*, 309 F.R.D. 532, 542 (N.D. Cal. 2015) (denying class certification).

[19] *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) (citing this statement approvingly in analyzing certification factors); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("no class may be certified that contains members lacking Article III standing"); *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010) (same); *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009) (reaching similar conclusion to *Denney*); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 691 (S.D. Fla. 2014) (considered whether the "class is impermissibly overbroad by including individuals who lack standing").

[20] *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 592 (1997); *Randolph*, 303 F.R.D. at 691, (the court stated "the Eleventh Circuit has not directly tackled the issue of whether a plaintiff must demonstrate that putative class members have Article III standing at the class certification stage" but the court indicated that such an analysis would be proper).

power to order relief to any uninjured plaintiff, class action or not."[21]  Importantly, because "an FCRA violation does not necessarily cause an injury in fact," each FCRA putative class member's standing must be analyzed.[22]

Here, Plaintiff's class definition includes persons who lack standing.  Plaintiff seeks to certify a class based on an allegedly invalid form that "confused" ***him***, causing ***him*** "informational" and "privacy" injury.  (ECF No. 37 at 7.)  But Plaintiff offers no evidence whatsoever to even suggest that class members were similarly "confused."  Rather, the only evidence establishes that putative class members were **not** "confused" and did not suffer a harm. As a mere illustrative example (and in no way exhaustive), 10 putative class members testified that they understood ADS's D&A Form, that a consumer report would be procured, and that the report would be used to make an employment decision. (Exs. 3-13.)  They also unequivocally testified that they did not suffer a harm -- informational, privacy or otherwise.  A class simply cannot consist of those without constitutionally required standing.[23]

Accordingly, Plaintiff's class definition is improperly defined to include persons who lack standing and, therefore, fails.  And this problem cannot be cured by redefining the class to exclude those who do not have standing, because no feasible means exist for determining on a class-wide basis whether a particular person was "confused." It would necessitate testimony from each class

---

[21] *Tyson Foods, Inc. v. Bouphakeo*, 136 S. Ct. 1036, 1053 (2016).

[22] *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1548 (2016); *Branch,* 323 F.R.D. at 551–52 (court found no standing because "an FCRA violation does not necessarily cause an injury in fact" and "the possibility that some class members did not suffer injuries causes individual injury issues to predominate").

[23] Plaintiff does not address this issue.  Presumably he will cite to *Fosbrink* and *Graham v. Pyramid Healthcare Sols., Inc.*, -- where similar proposed "Background Check" classes were certified -- but the Courts there were not presented with evidence that putative class members were not harmed (and, therefore, lacked standing) and a constitutional standing argument as to the other putative class members was not even raised. No. 8:16-cv-1324-T-30AAS, 2017 WL 2799928, at *4 n.3 (M.D. Fla. June 28, 2017) (emphasis added).

member and would devolve into endless individualized inquiries.

## 2. Most Class Members Have Arbitration Agreements.

Plaintiff did not sign a mandatory arbitration agreement precluding class claims, but the vast majority of putative class members did. Accordingly, Rule 23's commonality requirement is not met because the splintered class will not generate common answers. Further, Rule 23's adequacy, typicality, and predominance requirements are not met because Plaintiff lacks standing to raise defenses against the arbitration agreements' enforceability, which absent class members might otherwise wish to assert. Finally, Rule 23's numerosity requirement is not met in a new splintered putative class.

Plaintiff's proposed class appears broad on the surface (ECF No. 37 at 11), but in actuality it is non-existent. ADS only provided the D&A Form to those who <u>accepted</u> a conditional job offer. And ADS only procured a background report for those who accepted that offer <u>and</u> completed Concorde's additional paperwork.

Then, the vast majority were hired and signed arbitration agreements. The arbitration agreements require all employment-related disputes, like those resulting from employment forms, to be pursued in binding arbitration.[24] The agreements also preclude class claims. Only the relatively few putative class members who were not onboarded (*e.g.*, failed a drug screen, failed to show up, or failed the background check) did not sign mandatory arbitration agreements – like Plaintiff.

Because Plaintiff did not execute an arbitration agreement, he cannot represent putative class members who did. Courts have held that Rule 23's commonality requirement is not

---

[24] *See e.g., Noye v. Johnson & Johnson*, No. 1:15-CV-2382, 2017 WL 5135191, at *12 (M.D. Pa. Nov. 6, 2017) (compelling arbitration of plaintiff's claims brought under the FCRA where plaintiff agreed to arbitrate all employment related disputes)

satisfied in these circumstances because the putative class members' differences in contractual relationships prevents "common answers."[25]  Indeed, the Eleventh Circuit has explicitly stated that "whether [a defendant] can compel the unnamed putative class members to arbitrate … may effectively decide the viability of [a] class action."[26]  Here, a class cannot generate common answers required to show commonality because the vast majority of putative class members cannot even litigate in this forum or on a class basis.

Likewise, courts have regularly held that Rule 23's adequacy, typicality, and predominance requirements are not satisfied in these circumstances because the plaintiff lacks standing to raise defenses to the arbitration agreement's enforceability.  The Eleventh Circuit explained:

> [N]amed plaintiffs lack standing to assert any rights the unnamed putative class members might have to preclude [Defendant] from moving to compel arbitration because the named plaintiffs have no cognizable stake in the outcome of that question…. [and] [w]hether or not [Defendant] is precluded from asserting arbitration rights against *other* individuals has no legal relevance to the named plaintiffs.

*In re Checking Account Overdraft Litig.*, 780 F.3d at 1039.  *See also*, *Bowen v. First Family Fin. Servs*, 233 F.3d 1331, 1341 (11th Cir. 2000) ("In the absence of a substantial likelihood that the arbitration agreement will be enforced against the plaintiffs, they lack standing to challenge its

---

[25] *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 861 (D. Md. 2013) ("[W]here certain members of a class are subject to contracts containing arbitration clauses, while other class members are not, those differences in contractual relationships destroy[ ] the commonality and typicality of the class."); *Tan v. Grubhub, Inc*., No. 15-CV-05128, 2016 WL 4721439, at *4 (N.D. Cal. July 19, 2016); *Pablo v. ServiceMaster Global Holdings Inc*., No. C 08–03894, 2011 WL 3476473, at *3 (N.D. Cal. Aug. 9, 2011) (denying renewed motion for class certification where litigation would be devoted to determining which portion of putative class signed arbitration agreements); *Renton v. Kaiser Found. Health Plan*, No. C00–5370RJB, 2001 WL 1218773, at *5–6 (W.D. Wash. Sept. 24, 2001) (finding plaintiffs failed to meet commonality and typicality requirements in part due to class members' varying contractual provisions requiring arbitration or exhaustion of administrative remedies); *Nagel v. ADM Inv'r Servs., Inc*., 65 F. Supp. 2d 740, 746 (N.D. Ill. 1999) (denying motion for class certification and stating that common questions did not predominate over questions specific to individual plaintiffs, such as the interpretation of individual contracts, only some of which contained arbitration clauses).

[26] *In re Checking Account Overdraft Litig.*, 780 F.3d 1031, 1039 n.10 (11th Cir. 2015).

enforceability.").[27]  Without the ability to raise defenses, Plaintiff cannot adequately represent the interests of those class members bound by the agreement.[28]

Finally, numerosity does not exist.  No evidence shows joinder of the only potential class members left -- those few remaining applicants who accepted a conditional offer of employment had their consumer report generated but ultimately were not onboarded -- would be impractical. In *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 1267-68 (11th Cir. 2009), the Eleventh Circuit, reversing the district court, found numerosity lacking, despite plaintiff proffering an affidavit from a manager averring that there were "thousands" of associates nationwide, because no evidence existed that the purported class is "so numerous that joinder of all members is impracticable." Here, like *Vega*, no evidence shows the size of the applicable putative class and that joinder is impracticable and, as *Vega* made clear, speculation or conjecture of numerosity is insufficient.

### 3. The Vast Majority of Class Members Signed Different Forms Than Plaintiff.

Plaintiff's claim is not typical of the putative class because it includes individuals who signed and submitted different disclosure and authorization forms and, thus, the same standard conduct is not at issue.  Accordingly, if the "Background Class" is permitted to proceed as a class, no single common question would be capable of resolving the class members' claims in "one

---

[27] *Lee v. Am. Exp. Travel Related Servs., Inc.*, 348 F. App'x 205, 207 (9th Cir. 2009) (named plaintiffs lacked standing to argue that arbitration agreement was invalid where there was no threat of a motion to compel arbitration as to those particular plaintiffs).

[28] *See Tan*, 2016 WL 4721439, at *3 ("Lawson - having opted out of two separate agreements - would be unable to credibly make several procedural unconscionability arguments on behalf of unnamed class members"); *Tschudy v. J.C. Penney Corp.*, No. 11cv1011, 2015 WL 8484530, at *3 (S.D. Cal. Dec. 9, 2015) ("Named Plaintiffs are not subject to the arbitration agreement…. This results in the Named Plaintiffs failure to satisfy the typicality and adequacy requirements of Fed. R. Civ. P. 23…."); *King v. Capital One Bank (USA), N.A.*, No. 3:11-cv-00068, 2012 WL 5570624, at *14 (W.D. Va. Nov. 15, 2012) (finding that the plaintiff not subject to the arbitration provision "could not fairly and adequately represent in this Court the interests of individuals who are bound to pursue their claims in arbitration"); *Renton*, 2001 WL 1218773, at *7 (concluding no typicality where, "[u]nlike many class members, [plaintiff] was not subject to an arbitration agreement under her plan").

stroke," as Rule 23 requires.[29]

As the Eleventh Circuit recently stated in denying certification, "common questions rarely will predominate if the relevant terms vary in substance among the contracts."[30] Here, starting in 2017, ADS changed its FCRA documentation and, thus, the "relevant terms [at issue between the old and new documentation] var[ies]." Most notably, the new documentation has been divided into two separate documents, a "Disclosure" and "Authorization." Accordingly, the so-called "extraneous information" in the old <u>disclosure</u> form that Plaintiff challenges (arguing the <u>disclosure</u> did not "consist[] solely of the disclosure") is now contained in the <u>Authorization</u> rendering Plaintiff's disclosure challenge irrelevant. Further, some of the language used in the old form that Plaintiff challenges is no longer present.

It is anticipated Plaintiff will argue his class definition still suffices because it includes those who received "substantially similar forms" to the one Plaintiff received. But, <u>while the original Authorization and Disclosure form was certainly valid</u>, the changed documentation has directly resolved a majority of Plaintiff's (groundless) challenges to the old form. Thus, the documentation cannot be considered "substantially similar" and each will require an independent analysis. Accordingly, because the documentation at issue varies, the Court cannot determine the documentation's lawfulness for all class members on a class-wide basis, so a class action is not the superior method by which to resolve class members' claims.[31]

### 4.    Plaintiff Has Not Established Superiority.

---

[29] *Wal–Mart*, 564 U.S. at 350, 131 S.Ct. 2541.

[30] *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010)

[31] *Taylor v. Screening Reports, Inc.*, 294 F.R.D. 680, 689 (N.D. Ga. 2013) ("[A] class including both injured and non-injured consumers cannot satisfy the commonality requirement of Rule 23(a)."); *City Pension Fund for Firefighters & Police Officers in the City of Miami Beach v. Aracruz Cellulose S.A.*, No. 08-23317-CIV, 2009 WL 10664427, at *5 (S.D. Fla. Aug. 7, 2009); *Colomar v. Mercy Hosp., Inc.*, 242 F.R.D. 671, 677 (S.D. Fla. 2007).

Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy."[32] "The focus of this analysis is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs."[33] Superiority does not exist here because individual suits are an appropriate alternative.

Plaintiff argues that superiority exists because "it is unlikely that class members would bring individual actions on their own behalf because the costs of individual litigation would likely outweigh their recovery." (ECF No. 37 at 10.) This is simply not true. Courts that have denied class certification in cases involving the FCRA and similarly designed statutes have held that the remedy provisions applicable here make individual suits an appropriate alternative.[34]

An individual FCRA plaintiff can recover statutory penalties (thus, even if the harm is slight or difficult to quantify, an incentive to litigate exists) and actual damages (which presumably would entitle certain putative class members to more than the statutory cap to which Plaintiff has

---

[32] *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009).

[33] *Sacred Heart Health Sys. Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010).

[34] *Marino v. Home Depot USA, Inc.*, 245 F.R.D. 729, 737 (S.D. Fla. 2007) (recognizing that class action is not superior mechanism to resolve claim under Florida Deceptive and Unfair Trade Practices Act because statute authorizes award of attorneys' fees awarded to prevailing plaintiff); *Ticknor v. Rouse's Enters., LLC*, 592 F. App'x 276, 279 (5th Cir. 2014) (affirming denial of class certification under Fair and Accurate Credit Transactions Act (FACTA) and holding that "availability of attorneys' fees and punitive damages is a common basis for finding non-superiority, as the aggregation of claims is not necessary to facilitate suits in such instances"); *Grimes v. Rave Motion Pictures Birmingham, L.L.C.*, 264 F.R.D. 659, 669 (N.D. Ala. 2010) (class action is not superior method for this controversy under FCRA & FACTA); *Klotz v. Trans Union, LLC*, 246 F.R.D. 208, 217 (E.D. Pa. 2007) ("These financial incentives [the FCRA's attorney's fees and punitive damages provisions] might not encourage each putative class member to bring suit, but they dispel the notion that a class action is the only way to adjudicate the lawfulness of the defendant's practices."); *Anderson v Capital One Bank*, 224 F.R.D. 444, 453 (W.D. Wisc. 2004) ("[A] class action is not necessary to give injured parties an opportunity for relief that would be too expensive to obtain if they were limited to individual suits.... Not only can they receive up to $1000 in statutory damages or any amount of actual damages they incurred plus punitive damages if they can prove willfulness and actual damages if they prove only negligence, but their suits are essentially costless because they are entitled to an award of the attorney fees and costs they incur in bringing suit."); *Guarisma v. Hyatt Equities, LLC*, No. 1:17-cv-20931, 2017 U.S. Dist. LEXIS 179837, at *21 (S.D. Fla. 2017).

limited his claim). 15 U.S.C.A. §§ 1681n, 1681o. Further, and importantly, <u>costs and attorneys'</u> <u>fees are available</u>, which incentivizes representation even if the potential monetary damages are low for an individual plaintiff. (*Id.*) In addition, the availability of statutory damages (between $100 and $1,000) creates an individual inquiry for the district court due to its discretion to determine how much to award up to the statutory ceiling.[35] As one District Court in the Eleventh Circuit explained in denying class certification in a case brought under the FCRA:

> The FCRA provides sufficient motivation for adversely affected individuals to bring suit and for attorneys to represent them. The statute allows for the recovery of actual damages, including emotional distress damages, which are more plausible for those who have been adversely affected than those who are only curious, and such damages, along with the statutory provision entitling a plaintiff to recover costs and attorney's fees, should provide sufficient motivation for individual adversely affected plaintiffs to bring suit.

*Campos v. ChoicePoint, Inc.*, 237 F.R.D. 478, 490 (N.D. Ga. 2006).

Indeed, "there is no financial impediment for a person who receives non-compliant notice from finding a good lawyer to bring an individual claim,"[36] and "[i]ndividual actions are not only feasible, but they are much more manageable than a class action would be, especially where, [as here,] there might be victims in many states."[37] No evidence supports Plaintiff's conclusory conjecture that it is "unlikely that class members would bring individual actions on their own," and his assertion that class litigation is the "only means" to effectively adjudicate these disputes is simply false. (ECF No. 37 at 19.) Thus, a class action is not the superior method for adjudicating

---

[35] *Soutter v. Equifax Info. Servs., LLC*, 498 F. App'x 260, 265 (4th Cir. 2012); *Gomez v. Kroll Factual Data, Inc.*, No. 13-cv-0445, 2014 WL 1456530, at *4 (D. Colo. Apr. 14, 2014) ("The individualized nature of an FCRA claim—particularly one seeking statutory damages—has led most courts to deny class certification in these types of cases."); *Campos*, 237 F.R.D. at 486 n.20 (individual issues precluding class certification included "the determination of the proper amount of statutory damages to impose for each violation").

[36] *Guarisma*, 2017 U.S. Dist. LEXIS 179837, at *34.

[37] *Id.* at 34-35 (citation omitted).

this controversy.

**C. The Pre-Adverse Action Class Cannot Be Certified.**

**1. The Class Is Improperly Defined.**

As demonstrated below, the Pre-Adverse Class is not ascertainable because it cannot be determined in an administratively feasible way and, moreover, it is an improper "fail safe" class.

**a. The Class is Not Ascertainable.**

To satisfy the ascertainability requirement, a class definition must "contain[] objective criteria that allow[s] for class members to be identified in an administratively feasible way"[38] such that it "does not require much, if any, individual inquiry."[39] Plaintiff's Pre-Adverse Class, however, is not ascertainable. Indeed, this week, the Honorable Judge James S. Moody, Jr. rejected the exact same Pre-Adverse class that is proposed here because it was not "clearly ascertainable." *Fosbrink v. Area Wide Protective, Inc.*, No. 8:17-cv-1154-T-30TBM (M.D. Fla. May 8, 2018), ECF No. 58, at 2.

Plaintiff has proffered no evidence to show class members can be identified in an administratively feasible way. Indeed, the Court will be required to undertake an individualized inquiry into each putative class members' circumstances, including whether a consumer report was obtained, whether an adverse action was taken, what motivated the adverse action, and the extent to which proper notice was provided. Plaintiff's motion contends in conclusory fashion that "[t]here is no reason to believe the Pre-Adverse Action Class is any different or that it would be 'infeasible' to identify class members since the information necessary to identify class members is presumably also in Defendant's possession." But Plaintiff's argument fails because it is pure

---

[38] *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015) (citing *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014)).

[39] *Karhu,* 621 F. App'x at 946 (citing *Bussey*, 562 F. App'x at 787)).

speculation unsupported by any evidence.

Indeed, this court rejected the <u>exact</u> same proposed class that was premised on the <u>exact</u> same evidence (or lack thereof) and argument. Specifically, on May 8, 2018, Judge Moody denied in part[40] the plaintiff's motion for class certification because the proposed pre-adverse action class was not "clearly ascertainable."[41] The defined class and the argument the plaintiff's counsel made in support of that class is **<u>word for word</u>** the same Plaintiff's counsel makes here. Judge Moody rejected the argument, stating:

> Plaintiff merely states that '[t]here is no reason to believe the Adverse Action Class is any different or that it would be 'infeasible' to identify class members since the information necessary to identify class members is presumably also in Defendant's possession.' This is woefully deficient.[42]

In denying certification of the pre-adverse action class, Judge Moody explained:

> Defendant argues that determining membership in this class would require significant individualized undertakings. Defendant states that, for each putative class member, the Court would need to determine whether Defendant (1) obtained a consumer report, (2) took adverse action following procurement of the report, (3) took the adverse action based on the report, and, if so, (4) provided requisite pre-adverse action notice. The Court concludes that Defendant's arguments are well-taken. In short, Defendant has shown that, under these circumstances, class members cannot be identified in an administratively feasible (or manageable) way. In other words, Plaintiff has not met his burden to establish ascertainability. Accordingly, class certification is inappropriate for the Adverse Action Class and Plaintiff's motion will be denied with respect to this class.[43]

The exact same conclusion should be reached here. Because Plaintiff has not established ascertainability, his motion must be denied with respect to this class.

---

[40] The Court certified the plaintiff's Background Check Class under circumstances entirely different than those presented here; namely, putative class members did not have binding arbitration agreements and their Article III standing was not challenged. *Fosbrink.,* No. 8:17-cv-1154-T-30TBM, ECF No. 58, at 2.

[41] *Id.* at 2.

[42] *Id.* at 8 (*citation omitted*).

[43] *Id.* at 8-9.

### b.    The Class Is An Improper Fail-Safe Class.

Plaintiff's class claim also fails because membership is improperly defined by the merits of members' legal claims. These classes are known as improper "fail-safe" classes "because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment" in violation of *res judicata*.[44]

Courts in the Eleventh Circuit have cautioned against certifying fail-safe classes.[45] Plaintiff's Pre-Adverse Class epitomizes a fail-safe class, as membership is tied exclusively to the merits of each claim.  That is, the class includes only those who "were not provided the proper pre-adverse notice as required under 15 U.S.C. § 1681b(b)(3)(A)."   Here, Plaintiff's proposed class is defined as those persons "not provided the proper pre-adverse notice as required under 15 U.S.C. § 1681b(b)(3)(A)."   Valid class membership thus can only be ascertained after a determination of whether 15 U.S.C. § 1681b(b)(3)(A) was violated.   Because Plaintiff has proposed an improper fail-safe class, his motion must be denied with respect to this class.

### 2.    Individualized Issues Predominate and Common Answers Do Not Exist.

As demonstrated below, Plaintiff cannot establish commonality, typicality, predominance or numerosity for class certification due to ADS's alleged one-time policy deviation, nor can he establish commonality and typically for class certification because he was provided notice.

### a.    Individualized Issues Predominate Over ADS's One-Time Policy Deviation.

---

[44] *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 825 (7th Cir. 2012).

[45] *See, e.g., Hurt v. Shelby Cty. Bd. of Educ.*, No. 2:13-cv-230, 2014 U.S. Dist. LEXIS 116491, at *18 (N.D. Ala. Aug. 21, 2014).  In *Hurt*, for example, the court noted that in addition to the circumvention of res judicata, there is a "logical" problem with fail-safe classes in that "the class definition is essentially circular.  It defines its members on the presumption that such members have viable claims against the defendant.  So, the class definition assumes what it ostensibly seeks to prove." *Id.*

Plaintiff asks the Court to find commonality, typicality, predominance and numerosity solely based on his self-serving and unsubstantiated speculation that other individuals were treated the same as he was. This the Court cannot do. *Hugh's Concrete & Masonry Co. v. Se. Pers. Leasing, Inc.,* No. 8:12-cv-2631-T-17AEP, 2014 WL 794317, at * (M.D. Fla. Feb. 26, 2014) ("It is not enough, and is in fact error, for a district court to presume one instance of misconduct was common to all members of the class ...."). The *evidence* establishes that Plaintiff's situation was a one-time deviation from ADS's normal practice, which is in opposition to the uniform practice that would support class certification.

"'Typicality' exists when 'a plaintiff's injury arises from a wrong form or is directly **related to a wrong to a class**, and that wrong includes the wrong to the plaintiff.'"[46] Likewise, "[t]he commonality element is generally satisfied when a plaintiff alleges that '[d]efendants have engaged in a **standardized course of conduct** that affects all class members."[47] Here, the evidence shows that, in one particular instance, an ADS employee inadvertently failed to follow policy, and the situation was isolated to ADS's Lecanto, Florida office. Specifically, the Regional Office and Human Resources Managers temporarily and specially assigned to handle pre-adverse action notices at ADS's newly acquired Lecanto facility (and no other Florida locations) failed to follow ADS's normal notice procedure for Plaintiff (one individual) because a miscommunication arose due to the Human Resources Manager being on leave. No facts show that the Regional Office and Human Resources Managers or ADS made similar mistakes at any other time. And Plaintiff, who

---

[46] *Andrews v. American Tel. & Tel. Co.*, 95 F.3d 1014, 1022 (11th Cir. 1996) (emphasis added) (citation omitted), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 641 (2008); *see also Amchem Prods.*, 521 U.S. at 615 (the predominance inquiry is whether common questions of law or fact "predominate over any questions affecting only individual members").

[47] *Bush v. Calloway Consol. Grp. River City, Inc.*, No. 3:10-CV-841-J-37MCR, 2012 WL 1016871, at *6 (M.D. Fla. Mar. 26, 2012) (emphasis added) (citation omitted).

carries the burden, offered no such evidence.

Further, Plaintiff proffered no evidence that ADS's pre-adverse action notice process is inherently flawed. And the undisputed evidence is that it is not. The one-time deviation here certainly does not show -- without much, much more -- that ADS had a practice of failing to provide such notices nationwide over a two-year period with sufficient repetition to establish typicality and predominance.

The recent case of *Branch v. Government Employees Insurance Co.*, No. 3:16-cv-1010, 2018 WL 358504 (E.D. Va. Jan. 10, 2018), is directly on point, and illustrates why class certification is inappropriate here. In *Branch*, the plaintiff sought to certify an FCRA adverse-action class based upon the common question of whether the defendant's preliminary screening result itself constituted an adverse action. *Id.* at 544. The court stated, "GEICO's Adjudication Process is not inherently flawed…Nonetheless, other evidence indicated that a GEICO employee, Parker, might have deviated from the Adjudication Process …. In other words, the FCRA violation in this case, if any, stemmed not from the Adjudication Process itself, but rather from the individualized application of the Adjudication Process to Branch." *Id.* at 548. Accordingly, the Court found typicality and predominance did not exist because the claim arose from the individualized application of a valid process and, thus, liability required an analysis of each class member's unique circumstances. *Id.* at 548, 550-51. The same conclusion must be reached here.[48]

Numerosity is also lacking. The only evidence in the case reflects that on one occasion an ADS employee did not follow policy. Thus, Plaintiff has effectively identified a class of one. He

---

[48] Bridge v. Credit One Financial, 294 F.Supp.3d. 1019, 2018 WL 1074488 (D. Nev. February 26, 2018) (denying class certification where process was not inherently flawed and resolving the claims at issue necessarily required an inquiry into whether individual instances of communication with respect to the class representative and other class members amounted to a violation under the Telephone Consumer Protection Act.).

has provided no factual support to even <u>estimate</u> that a large putative class exists, let alone that joinder would be impractical.[49] Because Plaintiff has also not proven numerosity, class certification is improper for that reason as well.

> **b.** **Individualized Issues Predominate Over The Adequacy of Notice to Plaintiff.**

Plaintiff also cannot establish commonality and typicality because ADS provided him adequate notice of his consumer report, and the opportunity to cure, and he seeks to represent those who did not receive such notice.

The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class.[50] Typicality of claims seeks to ensure that the representative's interests align with the common questions affecting the class.[51] Plaintiff <u>was</u> <u>given</u> <u>notice</u>, while others purportedly were not, so their interests are not aligned.

While Plaintiff's declaration asserts he was not given "written notice prior to an adverse action being taken," (ECF No. 37-2, ¶12) the evidence establishes that ADS's Region Human Resources Manager <u>called</u> Plaintiff and informed him of his background report, that an adverse action would be taken, and that he had the opportunity to correct the report -- if it was incorrect -- by contacting the consumer reporting agency. Further, ADS's Region Human Resources Manager testified that the Pre-Adverse Action Packet was mailed to Plaintiff, even if Plaintiff now claims

---

[49] *Fosbrink*, No. 8:17-cv-1154-T-30TBM, ECF No. 58, at n. 2, noting, while it was declining to analyze the remaining Rule 23 factors with respect to the Adverse Action Class, "the class would not meet the elements of Rule 23(a) and Rule 23(b). For example, Plaintiff has not provided any factual support for his contention that the size of the putative Adverse Action Class renders joinder impracticable. Plaintiff merely speculates that this class is more than forty individuals."

[50] *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 fn. 13, 159-61 (1982) (the commonality and typicality requirements of Rule 23(a) tend to merge).

[51] *Id*.

he did not receive the packet until after the "adverse action" had been taken. In order for Plaintiff to establish ADS's liability, Plaintiff must demonstrate that the manner in which the notice was provided to him was insufficient. But he seeks to represent a putative class of persons who purportedly did not receive <u>any</u> notice. Indeed, this Court recently dismissed a plaintiff's FCRA claim for lack of standing where there was a procedural failure to issue plaintiff his pre-adverse action notice, but plaintiff suffered no harm.[52] Here, ADS will show Plaintiff received the proper notice or, at the very least, did not suffer a harm. Because the unique notice issues are individualized to Plaintiff, and are not common or typical to the class, litigation will not generate common answers.[53]

### 3. Plaintiff Has Not Established Class Superiority.

Finally, as discussed in Section IV.B.3, a class action is not the clearly superior method for fairly and efficiently adjudicating this controversy. This is particularly true for Plaintiff's Pre-Adverse Class for an additional reason. While Plaintiff abandoned a class claim for actual damages and elected to pursue only statutory damages, other class members may not, and their potential actual damages arising from an "adverse action" creates a potential conflict within the class.[54]

### V. CONCLUSION

Class certification is not proper. Plaintiff's claims are moot. Regardless, the vast majority of Background Class putative class members lack standing (or an individualized inquiry is

---

[52] *Riley v. UPS of Am., Inc.*, No. 6:17-cv-00254, 2017 WL 8312366, at *6-7 (M.D. Fla. Oct. 2, 2017).

[53] *Taylor v. Screening Reports, Inc.*, 294 F.R.D. 680, 689 (N.D. Ga. 2013) ("[A] class including both injured and non-injured consumers cannot satisfy the commonality requirement of Rule 23(a)."); *City Pension Fund for Firefighters & Police Officers in the City of Miami Beach v. Aracruz Cellulose S.A.*, No. 08-23317-CIV, 2009 WL 10664427, at *5 (S.D. Fla. Aug. 7, 2009) (finding a proposed class representative inadequate where notable factual differences would likely expose the proposed representative to unique defenses—unlike other members of the class—because the proposed representative proffered weaker evidence as to elements of his claim).

[54] *Clark v. Experian Info. Sols., Inc.*, Nos. 8:00-cv-1217, 8:00-cv-1218 & 8:00-cv-1219, 2001 WL 1946329, at *3-4 (D.S.C. Mar. 19, 2001).

required), and are subject to arbitration agreements, and/or signed different authorization and disclosure forms. Further, the Pre-Adverse Class is not ascertainable or properly defined and the circumstances are certainly unique to Plaintiff as they arose from a one-time deviation in policy. Finally, the FCRA's damage provisions make individual actions the better alternative. Class certification is simply inappropriate here.

/s/ K. Bryance Metheny
K. Bryance Metheny (Pro Hac Vice)
Email: bmetheny@burr.com
Secondary email: lsharitt@burr.com
H. Carlton Hilson (Pro Hac Vice)
Email: chilson@burr.com
Secondary email: lsharitt@burr.com

BURR & FORMAN LLP
420 North 20th Street
Suite 3400
Birmingham, AL 35203
Telephone:     (205) 251-3000
Facsimile:     (204) 458-5110

Jacqueline Simms-Petredis
FL Bar # 0906751
Email: jsimms-petredis@burr.com
Secondary email: mmichelson@burr.com
*Attorneys for Defendant*
*ADVANCED DISPOSAL SERVICES, INC.*

BURR & FORMAN LLP
201 North Franklin Street, Suite 3200
Tampa, Florida 33602
Tel: (813) 221-2626
Fax: (813) 357-3534

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail on this the 18th day of May 2018:

Marc R. Edelman, Esq.
Morgan & Morgan
201 North Franklin Street, Suite 700
Tampa, FL 33602

C. Ryan Morgan, Esq.
P.O. Box 4979
Orlando, FL 33802

Andrew Frisch, Esq.
600 North Pine Island Road, Suite 400
Plantation, Florida 33324

/s/ K. Bryance Metheny
OF COUNSEL

# EXHIBIT INDEX TO
# DEFENDANT'S OPPOSITION TO MOTION FOR CLASS
# CERTIFICATION

| Number | Title |
| --- | --- |
| Exhibit 1 | Declaration of Jaime Mitchell |
| Exhibit 2 | Declaration of Stephanie Halloran |
| Exhibit 3 | Declaration of Austin Anders |
| Exhibit 4 | Declaration of Lionel Corpus |
| Exhibit 5 | Declaration of Adam Foltz |
| Exhibit 6 | Declaration of John Gillespie |
| Exhibit 7 | Declaration of Phillip Inserra |
| Exhibit 8 | Declaration of Jeff Leonard |
| Exhibit 9 | Declaration of Nathan Paul Theus |
| Exhibit 10 | Declaration of DeAuntae Trice |
| Exhibit 11 | Declaration of Bryan Walling |
| Exhibit 12 | Declaration of Paul Wroblewski |